UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-61782-CIV-ALTMAN/HUNT

WHIRLPOOL CORPORATION, *et al.*,

    *Plaintiffs*,

v.

CLOSEOUT SOLUTIONS, LLC, *et al.*

    *Defendants*.

_____/

# REPORT AND RECOMMENDATION
## ON PLAINTIFFS' MOTION FOR FINAL DEFAULT JUDGMENT

THIS CAUSE comes before this Court on the Plaintiffs' Whirlpool Corporation, Whirlpool Properties, Inc., and Maytag Properties, LLC's Motion for Entry of Final Default Judgment Against Defendants[1] (the "Motion for Final Default Judgment"), ECF No. 61. The Honorable Roy K. Altman, United States District Judge, referred the Motion for Final Default Judgment to the undersigned, ECF No. 62. The undersigned has carefully reviewed the pleadings, the record in this case, the applicable law and is otherwise fully advised in the premises.

On August 24, 2021, Plaintiffs filed their Complaint, and on October 29, 2021 their First Amended and Supplemental Complaint, against Defendants for trademark counterfeiting under § 32 of the Lanham Act, 15 U.S.C. § 1114 (Count I); trademark infringement under § 32 of the Lanham Act, 15 U.S.C. § 1114 (Count II); false designation of origin under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (Count III),

---

[1] Defendants are Asset Inventory Redemption Services, Inc., Asset Inventory Liquidation Services, Inc., and John Baldino.

common law trademark infringement (Count IV); common law unfair competition (Count V); and deceptive and unfair trade practices under the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.* (Count VI). *See* ECF No. 22. In their First Amended and Supplemental Complaint, Plaintiffs request the Court (1) enter a permanent injunction enjoining Defendants from producing or selling goods that infringe on their trademarks, ECF No. 22 at p. 27, ¶ A; and (2) award of statutory damages pursuant to 15 U.S.C. §1117(c), *Id.* at p. 28, ¶ C. For the reasons more fully discussed below, the undersigned respectfully RECOMMENDS that Plaintiffs' Motion for Final Default Judgment, ECF No. 61, be GRANTED.

## I.   FACTUAL BACKGROUND[2]

Plaintiff Whirlpool Properties, Inc. is the registered owner of the following trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (the "Whirlpool Marks"):

| Trademark | Registration Number | Class(es) / Good(s) |
|---|---|---|
| WHIRLPOOL (word mark) | 4,983,312 | Water filtration and purification units and replacement cartridges and filters therefor for refrigerators |
| Whirlpool (design mark) | 1,251,511 | Refrigerators |
| WHIRLPOOL (word mark) | 1,670,524 | Refrigerators and freezers |
| WHIRLPOOL (word mark) | 937,550 | Refrigerators |

---

[2] The factual background is taken from Plaintiffs' First Amended and Supplemental Complaint, ECF No. 22, Plaintiffs' Motion for Final Default Judgment, ECF No. 61, and supporting evidentiary submissions.

2

| Trademark | Registration Number | Class(es) / Good(s) |
|---|---|---|
| Whirlpool (design mark) | 1,832,111 | Water filtration units |
| WHIRLPOOL (word mark) | 626,550 | Refrigerators |
| KITCHENAID (word mark) | 2,520,284 | Refrigerators; water supply units for dispensing cold water and ice from refrigerators |
| KitchenAid (design mark) | 2,520,285 | Refrigerators; water supply units for dispensing cold water and ice from refrigerators |
| KITCHENAID (word mark) | 1,585,507 | Refrigerators |

*See* Declaration of Patrick Hall, ECF No. 61-1 at ¶ 6. The Whirlpool Marks are used in connection with the manufacture and distribution of quality goods in the categories identified above. *See id.*

Plaintiff Maytag Properties, LLC is the registered owner of the following trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (the "Maytag Marks"):

| Trademark | Registration Number | Class(es) / Good(s) |
|---|---|---|
| MAYTAG (word mark) | 868,637 | Dishwashers and food waste disposers |
| MAYTAG (word mark) | 2,638,631 | Appliance installation, maintenance, and repair services |

| Trademark | Registration Number | Class(es) / Good(s) |
|---|---|---|
| MAYTAG (design mark) | 4,187,080 | Installation, maintenance and repair of appliances |
| MAYTAG (design mark) | 4,210,316 | Refrigerators |
| AMANA (word mark) | 3,059,004 | Refrigerators |
| AMANA (word mark) | 3,697,563 | Installation, maintenance, and repair of refrigerators |
| JENN-AIR (word mark) | 3,710,972 | Installation, maintenance, and repair of refrigerators |
| [Jenn-Air design mark] | 3,710,973 | Installation, maintenance, and repair of refrigerators |
| JENN-AIR (word mark) | 1,547,093 | Refrigerators |

*See* ECF No. 61-1 at ¶ 13. The Maytag Marks are used in connection with the manufacture and distribution of quality goods in the categories identified above. *See id.*

Defendants have advertised, promoted, sold, and distributed goods using what the Plaintiffs have determined to be counterfeits, infringements, reproductions, or colorable imitations of the Whirlpool Marks and Maytag Marks (collectively "Plaintiffs' Marks"). *See id.* at ¶ 20; *see also* Declaration of Jeffrey D. Harty, ECF No. 61-2 at ¶¶ 2, 6-7. The

4

Defendants are not now, nor have they ever been, authorized or licensed to use, reproduce, or make counterfeits, reproductions, or colorable imitations of the Plaintiffs' Marks. *See* ECF No. 61-1 at ¶¶ 11, 18, 20.

Whirlpool was informed in discovery in this matter by Defendant Closeout Solutions, LLC ("Closeout"),[3] that the counterfeit water filters that are the subject of Whirlpool's First Amended and Supplemental Complaint [ECF No. 22] were sold to Closeout by Defendants. *See* ECF No. 61-2 at ¶ 2. The Defendants' invoice to Closeout for the counterfeit water filters at issue list Defendant Asset Inventory Redemption Services, Inc., as the seller. *See id.* at ¶ 6. However, Closeout was instructed to send wire transfers to Defendant Asset Inventory Liquidation Services, Inc. *See id.* at ¶ 7. Defendant John Baldino is an officer of both corporations. (First Am. & Suppl. Compl. ¶ 11.)

On August 24, 2021, Plaintiffs filed their Complaint against Defendant Closeout Solutions, LLC. *See* ECF No. 1. On October 29, 2021, Plaintiffs filed their First Amended and Supplemental Complaint adding Defendants Asset Inventory Redemption Services, Inc., Asset Inventory Liquidation Services, Inc., and John Baldino. *See* ECF No. 22. On November 3, 2021, Defendants Asset Inventory Redemption Services, Inc. and John Baldino were served with their respective Summons and a copy of the First Amended and Supplemental Complaint through personal service on Mr. Baldino. *See* Declaration of T. Raquel Wiborg-Rodriguez, ECF No. 61-3 at ¶ 3; *see also* ECF Nos. 26 and 33, (proof of service). On November 8, 2021, Defendant Asset Inventory Liquidation Services, Inc. was served with its Summons and a copy of the First

---

[3] Defendant Closeout Solutions, LLC is not at issue in Plaintiffs' Motion for Final Default Judgment as the parties have reached a settlement. *See* ECF Nos. 58, 63.

5

Amended and Supplemental Complaint through personal service on Mr. Baldino. *See* ECF No. 61-3 at ¶ 4; *see also* ECF No. 34, (proof of service).

The time allowed for Defendants to respond to the First Amended and Supplemental Complaint has expired. *See* ECF No. 61-3 at ¶ 5. Defendants have not been granted any extension of time to respond, nor have they served or filed an Answer or other response. *Id.* at ¶ 6. Plaintiffs assert that, to their knowledge, none of the Defendants are infants or incompetent persons, and upon information and belief, the Servicemembers Civil Relief Act does not apply. *Id.* at ¶ 7. On December 7, 2021, Plaintiffs filed their Request for Clerk's Entry of Default against Defendants, ECF No. 37, and the Clerk subsequently entered default against each Defendant on December 8, 2021 for failure to plead or otherwise defend pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, ECF No. 39. On May 4, 2022, the Court entered an Order on Default Final Judgment Procedure requiring Plaintiffs to submit their Motion for Entry of Final Default Judgment, ECF No. 57. Plaintiffs now move the Court to grant Final Default Judgment against Defendants.

## II.     **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 55(b)(2), the Court is authorized to enter a final judgment of default against a party who has failed to plead in response to a complaint. "A defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) (internal quotations and citations omitted). However, "a defendant's default does not in itself warrant the court entering a default

judgment." *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). The Court must determine whether there is a sufficient basis in the pleadings for the judgment. *See id.*

### III. DISCUSSION

#### A. Liability

1. T*rademark Counterfeiting Under 15 U.S.C. § 1114 (Count I).*

Section 32 of the Lanham Act, 15 U.S.C. § 1114, provides liability for trademark counterfeiting if, without the plaintiff's consent, a defendant intentionally uses in commerce, a counterfeit of the plaintiff's registered mark in a manner likely to cause consumer confusion, deception, or mistake. 15 U.S.C. § 1114(1); *see also ABS-CBN Corp. v. Barrientos*, No. 15-61515-CIV-LENARD/GOODMAN, 2016 U.S. Dist. LEXIS 186461 (S.D. Fla. May 16, 2016). To prevail on the merits of a trademark counterfeiting claim, a plaintiff must show that a defendant (1) used a counterfeit of its mark, (2) in commerce, (3) in a manner likely to cause consumer confusion, deception, or mistake, and (4) such use was intentional or willfully blind. *Chanel, Inc. v. Singleton*, No. 08-61065-CIV-MIDDLEBROOKS/JOHNSON, 2009 U.S. Dist. LEXIS 151772 (S.D. Fla. May 14, 2009, docketed May 15, 2009) (citing *Babbitt Electronics, Inc. V. Dynascan Corp.*, 38 F.3d 1161, 1181 (11th Cir. 1994)). Plaintiffs have sufficiently alleged and established each of these elements: (1) Defendants used spurious designations that are identical to, or substantially indistinguishable from, Plaintiffs' Marks, *see* ECF No. 22 at ¶¶ 60, 64; (2) Defendants used such spurious designations in interstate commerce, *see id.* at ¶¶ 60, 63–64; (3) Defendants' use of Plaintiffs' Marks is likely to cause mistake, or to deceive consumers into believing that the goods sold by Defendants originated from

7

Plaintiffs, or are in some way sponsored by, endorsed by, connected to, or affiliated with Plaintiffs or their goods, *see id.* at ¶¶ 54, 64; and (4) Defendants intentionally and willfully copied and used Plaintiffs' Marks knowing they are counterfeit, *see id.* at ¶¶ 47, 51, 56, 61, 65. Accordingly, Plaintiffs are entitled to a default judgment on their trademark counterfeiting claim.

### 2. T*rademark Infringement of Registered Marks Under 15 U.S.C. § 1114 (Count II).*

Similarly, section 32 of the Lanham Act, 15 U.S.C. § 1114, provides liability for trademark infringement if, without the consent of the registrant, a defendant uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark … which … is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(a) (alterations added). To prevail on the merits of a trademark infringement claim, a plaintiff must show that "(1) its mark has priority, (2) defendant used its mark in commerce, and (3) defendant's mark is likely to cause consumer confusion." *PetMed Express*, 336 F. Supp. 2d at 1217-18 (citing *Int'l Cosmetics Exch., Inc., v. Gapardis Health & Beauty, Inc.*, 303 F.3d 1242 (11th Cir. 2002)). Plaintiffs have sufficiently alleged and established each of these elements: (1) Plaintiffs' ownership of the trademarks at issue precede Defendants' infringement, *see* ECF No. 22 at ¶¶ 31–45, 68; (2) Defendants advertised, offered for sale, and sold goods in commerce bearing the Plaintiffs' Marks without Plaintiffs' consent or authorization, *see id.* at ¶¶ 46–47, 55–56; and (3) the marks used on the goods Defendants advertised, offered for sale, and sold are so similar to the Plaintiffs' Marks that they are likely to cause consumer confusion, *see id.* at ¶¶ 46–48, 68. Accordingly, Plaintiffs are entitled to a default judgment on their trademark infringement claim.

      3. *False Designation of Origin Under 15 U.S.C. § 1125(a) (Count III).*

To prevail on a claim for false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), Plaintiffs must prove that Defendants used in commerce, in connection with any goods or services, any word, term, name, symbol or device, or any combination thereof, or any false designation of origin that is likely to deceive as to the affiliation, connection, or association of Defendants with Plaintiffs, or as to the origin, sponsorship, or approval, of Defendants' goods by Plaintiffs. *See* 15 U.S.C. § 1125(a)(1). As with trademark infringement claims, the test for liability for false designation of origin under Section 43(a) is also "whether the public is likely to be deceived or confused by the similarity of the marks at issue.". *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780 (1992). As noted above, Plaintiffs' well-pled allegations establish Plaintiffs' ownership of the Plaintiffs' Marks, *see* ECF No. 22 at ¶¶ 31–45, and there is a likelihood of consumer confusion due to Defendants' use of the Plaintiffs' Marks, *see id.* at ¶¶ 46–48, 68. As such, Plaintiffs are entitled to a default judgment on their false designation of origin claim.

      4. *Common-Law Unfair Competition and Trademark Infringement (Counts IV and V).*

Whether a defendant's use of a plaintiff's trademarks created a likelihood of confusion between the plaintiffs' and the defendants' products is also the determining factor in the analysis of unfair competition under Florida common law. *Rolex Watch U.S.A., Inc. v. Forrester*, No. 83- 8381-Civ-Paine, 1986 WL 15668, at *3 (S.D. Fla. Dec. 9, 1987). Additionally, the analysis of liability for Florida common law trademark infringement is the same as the analysis of liability for trademark infringement under § 32(a) of the Lanham Act. *See PetMed Express, Inc. v. MedPets.com, Inc.*, 336 F. Supp.

2d 1213, 1217-18 (S.D. Fla. 2004). As discussed above, Plaintiffs have alleged all the elements for statutory trademark infringement. Thus, Plaintiffs are also entitled to default judgment on their claims for common law unfair competition and common law trademark infringement.

### 5. *Florida Deceptive and Unfair Trade Practices Act (Count VI)*

The Florida Deceptive and Unfair Trade Practices Act "prohibits [u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 983 (11th Cir. 2016) (citing Fla. Stat. § 501.204(1)) (internal quotations omitted). To prevail on Plaintiffs' claim, they must prove: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Id.* (citation omitted). Plaintiffs have sufficiently alleged and established each of these elements: (1) Defendants engaged in the unauthorized and willful sale and distribution of counterfeit refrigerator water filters using representations that tend to mislead or deceive the consumers, *see* ECF No. 22 at ¶¶ 85–88; (2) Defendants' actions cause a probability of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services, *see id.* at ¶¶ 87; and (3) Defendants' acts have caused damage to Whirlpool, *see id.* at ¶¶ 92. Accordingly, Plaintiffs are entitled to a default judgment on their claim under Florida's Deceptive and Unfair Trade Practices Act.

### B. Injunctive Relief and Damages

Plaintiffs request an award of equitable relief and monetary damages against Defendants. This Court may award statutory damages "without holding an evidentiary hearing based upon affidavits and other documentary evidence if the facts are not

disputed." *Perry Ellis Int'l, Inc. v. URI Corp.*, No. 06-22020-CIV, 2007 WL 3047143, at *1 (S.D. Fla. Oct. 18, 2007). Although the Court is permitted to conduct a hearing on a default judgment in regards to damages pursuant to Fed. R. Civ. P. 55(b)(2)(B), an evidentiary hearing is not necessary where there is sufficient evidence on the record to support the request for damages. *See SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005) ("Rule 55(b)(2) speaks of evidentiary hearings in a permissive tone . . . We have held that no such hearing is required where all essential evidence is already of record.") (citations omitted); *see also PetMed Express*, 336 F. Supp. 2d at 1223 (entering default judgment, permanent injunction and statutory damages in a Lanham Act case without a hearing). Where, as here, a plaintiff seeks statutory damages and has filed detailed declarations and documentary evidence, a hearing is unnecessary to determine damages. *See Petmed*, 336 F. Supp. 2d at 1217.

Based on the default entered against Defendants, Plaintiffs' well-pleaded allegations of fact in the First Amended and Supplemental Complaint are admitted and thus not in dispute. *See, e.g., Eagle Hosp. Physician*s, 561 F.3d at 1307. Plaintiffs have also presented sufficient evidence to support their request for a permanent injunction and statutory damages. As such, Plaintiffs are entitled to the entry of a final default judgment awarding the relief sought.

### 1. *Injunctive Relief*

Pursuant to the Lanham Act, a district court is authorized to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable," to prevent violations of trademark law. *See* 15 U.S.C. § 1116(a). Indeed, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases,

11

since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Burger King Corp. v. Agad*, 911 F. Supp. 1499, 1509-10 (S.D. Fla. 1995) (citing *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988)). Moreover, even in a default judgment setting, injunctive relief is available. *See e.g., PetMed Express, Inc.*, 336 F. Supp. 2d at 1222-23. Defendants' failure to respond or otherwise appear in this action makes it difficult for Plaintiffs to prevent further infringement absent an injunction. *See Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1103 (N.D. Cal. 2003) ("[D]efendant's lack of participation in this litigation has given the court no assurance that defendant's infringing activity will cease. Therefore, plaintiff is entitled to permanent injunctive relief.").

Permanent injunctive relief is appropriate where a plaintiff demonstrates that (1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardship favors an equitable remedy; and (4) an issuance of an injunction is in the public's interest. *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 392-93 (2006). Plaintiffs have carried their burden on each of the four factors. Accordingly, permanent injunctive relief is appropriate.

Specifically, in trademark cases, "a sufficiently strong showing of likelihood of confusion . . . may by itself constitute a showing of a substantial threat of irreparable harm." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998); *see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 986 (11th Cir. 1995) ("There is no doubt that the continued sale of thousands of pairs of counterfeit jeans would damage LS & Co.'s business reputation and might decrease its legitimate sales."). Plaintiffs' First Amended and Supplemental Complaint alleges that Defendants'

12

unlawful actions have caused Plaintiffs irreparable injury and will continue to do so if Defendants are not permanently enjoined. *See* ECF No. 22 at ¶¶ 66, 69, 73 77, 83, 92. Further, the First Amended and Supplemental Complaint alleges, and the submissions by Plaintiffs show, that the goods promoted, advertised, offered for sale, and sold by Defendants are nearly identical to Plaintiffs' genuine products. *See id.* at ¶ 47 ("Defendants intentionally copied and used the Marks on and in connection with refrigerator filters with the intention of creating the impression that Defendants' filters originated from Whirlpool, when in fact they did not.").

Plaintiffs have no adequate remedy at law so long as the Asset Inventory Defendants continue to use Plaintiffs' trademarks because Plaintiffs will have no control of the quality of what appears to be their products in the marketplace. An award of monetary damages alone will not cure the injury to Plaintiffs' reputation and goodwill that will result if Defendants' infringing and counterfeiting actions are allowed to continue. Moreover, Plaintiffs face hardship from loss of sales and their inability to control their reputation in the marketplace. By contrast, Defendants face no hardship if they are prohibited from the infringement of Plaintiffs' trademarks, which is an illegal act. Finally, the public interest supports the issuance of a permanent injunction against Defendants to prevent consumers from being misled by Defendants' products. *See Chanel, Inc. v. besumart.com*, 240 F. Supp. 3d 1283, 1291 (S.D. Fla. 2016) ("[A]n injunction to enjoin infringing behavior serves the public interest in protecting consumers from such behavior.").

The Court's broad equity powers allow it to fashion injunctive relief necessary to stop Defendants' infringing activities. *See, e.g., Swann v. Charlotte-Mecklenburg Bd. of*

*Educ.*, 402 U.S. 1, 15 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for . . . [t]he essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case." (citation and internal quotation marks omitted)); *United States v. Bausch & Lomb Optical Co.*, 321 U.S. 707, 724 (1944) ("Equity has power to eradicate the evils of a condemned scheme by prohibition of the use of admittedly valid parts of an invalid whole.").

Defendants are profiting from the deliberate misappropriation of Plaintiffs' rights. Accordingly, the Court may fashion injunctive relief to enjoin Defendants from conducting their unlawful activities in selling water filters that could pose a serious health and safety risk for consumers across the United States.

2. *Statutory Damages*

Plaintiffs request an award of statutory damages against Defendants for trademark counterfeiting in Count I. Plaintiffs assert that damages for Counts II, III, IV, and V are encompassed in Count I, and are currently limiting their request for damages as to Count VI as to those prayed for in Count I. *See* ECF No. 61 at 12.

<u>Damages as to Count I for Trademark Counterfeiting</u>

In a case involving the use of counterfeit marks in connection with a sale, offering for sale, or distribution of goods, 15 U.S.C. § 1117(c) provides that a plaintiff may elect an award of statutory damages at any time before final judgment is rendered in the sum of not less than $1,000.00 nor more than $200,000.00 per counterfeit mark per type of good. 15 U.S.C. § 1117(c)(1). In addition, if the Court finds that Defendants' counterfeiting actions were willful, it may impose damages above the maximum limit up

to $2,000,000.00 per counterfeit mark per type of good. 15 U.S.C. § 1117(c)(2). Pursuant to 15 U.S.C. § 1117(c), Plaintiffs have elected to recover an award of statutory damages as to Count I of the First Amended and Supplemental Complaint. *See* ECF No. 61 at 7.

The Court has wide discretion to determine the amount of statutory damages. *See PetMed Express, Inc.*, 336 F. Supp. 2d at 1219 (citing *Cable/Home Commc'n Corp. v. Network Prod., Inc.*, 902 F.2d 829, 852 (11th Cir. 1990)). An award of statutory damages is appropriate despite a plaintiff's inability to prove actual damages caused by a defendant's infringement. *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 852 (E.D. Mich. 2006) ("[A] successful plaintiff in a trademark infringement case is entitled to recover enhanced statutory damages even where its actual damages are nominal or non-existent."); *Playboy Enter., Inc. v. Universal Tel-A-Talk, Inc.*, No. CIV.A. 96-6961, 1998 WL 767440, at *8 (E.D. Pa. Nov. 3, 1998) (awarding statutory damages where plaintiff failed to prove actual damages or profits). Indeed, Congress enacted a statutory damages remedy in trademark counterfeiting cases because evidence of a defendant's profits in such cases is almost impossible to ascertain. *See, e.g.*, S. REP. NO. 104-177, pt. V(7) (1995) (discussing purposes of Lanham Act statutory damages); *see also PetMed Express, Inc.*, 336 F. Supp. 2d at 1220 (statutory damages are "especially appropriate in default judgment cases due to infringer nondisclosure"). This case is no exception.

Here, the allegations in the First Amended and Supplemental Complaint and the evidence establish Defendants intentionally copied the Plaintiffs' Marks for the purpose of deriving the benefit of Plaintiffs' famous reputation. Defendants have defaulted on

15

Plaintiffs' allegations of willfulness. *See* ECF No. 22 ¶¶ 46-47, 51, 56, 61; *see also Arista Records, Inc. v. Beker Enters., Inc.*, 298 F. Supp. 2d 1310, 1313 (S.D. Fla. 2003) (citation omitted) (concluding a court may infer willfulness from the defendants' default). As such, the Lanham Act permits the Court to award up to $2,000,000.00 per infringing mark on each type of good as statutory damages to ensure that Defendants do not continue their intentional and willful counterfeiting activities.

The evidence in this case demonstrates that Defendants promoted, distributed, advertised, offered for sale, and/or sold at least one (1) type of good bearing at least five (5) marks which were in fact a counterfeit of the Plaintiffs' Marks. *See* ECF No. 22 at ¶¶ 32, 35, 38, 41, 44, 46-49, 60-64; ECF No. 61-1 at ¶¶ 6, 13, 20; *see also* ECF No. 61-2. And, as noted, based upon the evidence Plaintiffs have presented, it is reasonable to infer Defendants' infringement was willful. As such, Plaintiffs suggest the Court award statutory damages of $750,000.00 per mark, per type of good. As Defendants used five (5) counterfeit marks on one type of good, Plaintiffs suggest the Court award statutory damages of $3,750,000.00 against Defendants as partial compensation to Plaintiffs and to deter Defendants and others from continuing to counterfeit Plaintiffs' trademarks. The award should be sufficient to deter Defendants and others from continuing to counterfeit or otherwise infringe Plaintiffs' trademarks, compensate Plaintiffs, and punish Defendants, all stated goals of 15 U.S.C. § 1117(c). The Undersigned finds that this award of statutory damages falls within the permissible statutory range under 15 U.S.C. § 1117(c) and is just. *See, Apple Corps Ltd. v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, Case No. 20-cv-62334-RKA (S.D. Fla. July 1, 2021, docketed July 2, 2021) (awarding the plaintiff $1,000,000.00 per counterfeit mark per

16

type of good); *Burberry Ltd. v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, Case No. 20-cv-62190-RKA (S.D. Fla. Feb. 8, 2021) (awarding the plaintiffs $1,000,000.00 per counterfeit mark per type of good); *Chanel, Inc. v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, Case No. 19-cv-61646-RKA (S.D. Fla. Jan. 22, 2021) (awarding the plaintiff $1,000,000.00 per counterfeit mark per type of good); *The North Face Apparel Corp. v. The Individuals, P'ships, and Unincorporated Ass'ns Identified on Schedule "A"*, Case No. 20-cv-61750-RKA (S.D. Fla. Nov. 10, 2020) (awarding the plaintiffs $1,000,000.00 per counterfeit mark per type of good). *See also Specialized Bicycle Components v. Individuals*, No. 21-61893-CIV-RUIZ, 2021 U.S. Dist. LEXIS 248405 (S.D. Fla. Nov. 12, 2021, docketed Nov. 16, 2021) (awarding the plaintiff $1,000,000.00 per counterfeit mark per type of good); *Burberry Ltd. v. Individuals P'ship & Unincorporated Ass'ns Identified on Schedule "A"*, No. 20-60573-CIV-SINGHAL, 2020 U.S. Dist. LEXIS 248453 (S.D. Fla. Oct. 30, 2020) (awarding the plaintiffs $1,000,000.00 per counterfeit mark per type of good). Accordingly, Plaintiffs should be awarded $3,750,000.00 in statutory damages against Defendants pursuant to 15 U.S.C. § 1117(c).

## IV.   RECOMMENDATION

For the foregoing reasons, the undersigned respectfully RECOMMENDS that Plaintiffs' Motion for Final Default Judgment, ECF No. 61, be GRANTED and Final Default Judgment and Permanent Injunction be entered as follows:

1. Permanent Injunctive Relief:

The Defendants and their officers, directors, employees, agents, representatives, servants, subsidiaries, distributors, attorneys, and all persons acting in concert and

17

participation with the Defendants are hereby permanently restrained and enjoined from:

   a. manufacturing or causing to be manufactured, importing, advertising, or promoting, distributing, selling or offering to sell counterfeit and infringing goods bearing and/or using Plaintiffs' trademarks, or any confusingly similar trademarks identified in Paragraphs 32, 35, 38, 41, and 44 of the First Amended and Supplemental Complaint (the "Plaintiffs' Marks");

   b. using the Plaintiffs' Marks in connection with the sale of any unauthorized goods;

   c. using any logo, and/or layout which may be calculated to falsely advertise the services or products of Defendants as being sponsored by, authorized by, endorsed by, or in any way associated with Plaintiffs;

   d. falsely representing themselves as being connected with Plaintiffs, through sponsorship or association;

   e. engaging in any act which is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of Defendants are in any way endorsed by, approved by, and/or associated with Plaintiffs;

   f. using any reproduction, counterfeit, copy, or colorable imitation of the Plaintiffs' Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants;

   g. affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent goods offered for sale or sold by Defendants as being those of Plaintiffs or in any way endorsed by Plaintiffs and from offering such goods in commerce;

   h. otherwise unfairly competing with Plaintiffs; and

   i. effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth above.

2. Statutory damages in favor of the Plaintiffs pursuant to 15 U.S.C. § 1117(c).

   a. Award Plaintiffs damages of $3,750,000.00 against the Defendants, jointly and severally, for which let execution issue, based upon the Court's finding that the Defendants used at least five counterfeit trademarks on one type of good. The Court considered both the willfulness of Defendants' conduct and the deterrent value of the award imposed, and

    the award falls within the permissible statutory range of 15 U.S.C. § 1117(c).

3. Interest from the date this action was filed shall accrue at the legal rate. *See* 28 U.S.C. § 1961.

4. The Court retains jurisdiction to enforce this Final Default Judgment and Permanent Injunction.

5. The Clerk shall **CLOSE** this case. All deadlines and hearing are **TERMINATED,** and any pending motions are **DENIED AS MOOT.**

Within fourteen days after being served with a copy of this Report and Recommendation, any Party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this district. 28 U.S.C. §636(b)(1); S.D. Fla. Mag. R. 4(b). The Parties are hereby notified that a failure to timely object waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3–1 (2016); *see Thomas v. Arn*, 474 U.S. 140 (1985).

**DONE and ORDERED** at Fort Lauderdale, Florida, this 10th day of June 2022.

_____
PATRICK M. HUNT
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
The Honorable Roy K. Altman
All counsel of record